Dale G. HIMES, Appellant,

v.

**WOODINGS–VERONA TOOL WORKS, INC., Respondent,**

**Northeast Supply Company, Inc., Defendant.**

No. C4–96–2199.

Court of Appeals of Minnesota.

July 8, 1997.

Review Denied Aug. 26, 1997.

Gary J. Halom, Ashley, Hannula & Halom, Superior, WI, for Appellant.

C. Marshall Friedman, P.C., Patrick S. O'Brien, St. Louis, MO, for Appellant.

Jerome D. Feriancek, Thomas R. Thibodeau, Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for Respondent.

Considered and decided by DAVIES, P.J., and SCHUMACHER and HOLTAN,* JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Dale G. Himes, the plaintiff in this product liability and negligence action, challenges the trial court's exclusion of the testimony and report of an expert. The exclusion was a sanction for loss of a crucial piece of evidence. We affirm.

## FACTS

Himes was employed as a track laborer for a railroad. He was injured in June 1989 when a four-foot-long track bolt wrench broke. Himes brought a Federal Employers Liability Act (FELA) claim against the railroad. The railroad's claims agent sent the wrench to a metallurgical engineer for evaluation. That expert concluded that the metal in the wrench was excessively brittle for use in that type of wrench. Based on its expert's evaluation, the railroad settled Himes's FELA claim.

After settlement of the FELA claim, Himes brought a separate action against respondent Woodings–Verona Tool Works, Inc., under two theories: (1) product liability, alleging that the wrench was defective and unreasonably dangerous; and (2) negligence in the design, production, and manufacture of the wrench. It soon became evident that the wrench had been either lost or misplaced while in possession of the railroad's claims agent.

Before trial, Woodings–Verona moved to exclude the expert's metallurgy testimony and report because Woodings–Verona did not have an opportunity to examine the wrench. The trial judge denied the motion, noting that the loss of the wrench was "no one's fault" and that, because Woodings–Verona was able to have its own expert review the report, the issue became "one of weight before the jury." Later in the trial, a mistrial was declared when a witness for Woodings–Verona mentioned, contrary to the court's

order, the earlier settlement between Himes and the railroad.

A new trial was scheduled before a different judge because of the retirement of the first judge. Woodings–Verona again moved to exclude the testimony and report of Himes's expert, based on the unavailability of the wrench for Woodings–Verona's own inspection and testing. Woodings–Verona, at the same time, moved for summary judgment on the ground that, absent that evidence, Himes could not prove his causes of action. The trial court, relying expressly on *Patton v. Newmar Corp.*, 538 N.W.2d 116 (Minn. 1995), which had been decided after the retired judge's ruling, granted both motions and the case was dismissed.

Himes challenges the trial court's decision.

## ISSUES

1. Did the trial court err in excluding the expert testimony and report because the wrench was no longer available for Woodings–Verona's inspection and testing?

2. Was Woodings–Verona collaterally estopped from relitigating the issue after the first trial court's decision to allow admission of the evidence?

## ANALYSIS

1. **Exclusion of Expert Testimony and Report**

■ The decision on sanctions for the spoliation of evidence focuses on prejudice to the opposing party, even where the evidence was destroyed through "inadvertence or negligence" as opposed to willful action. *Patton v. Newmar Corp.*, 538 N.W.2d 116, 119 (Minn.1995). We may reverse a trial court's decision to sanction for spoliation

"only when it is clear that no reasonable person would agree [with] the trial court's assessment of what sanctions are appropriate."

*Id.* (quoting *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir.1992)).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

In *Patton*, the plaintiffs alleged that they were injured by a negligently designed fuel system in their motor home. *Id.* at 117. The defendant manufacturer asked to inspect the vehicle, but by that time the motor home location was unknown. In addition, the plaintiff's expert had removed—and then lost—several unidentified components. *Id.* at 117–18. As characterized by the supreme court, the trial court granted a motion to exclude the expert's testimony and other evidence derivative of his investigation. The *Patton* trial court then granted summary judgment to the defendant because the plaintiffs, as a result of the exclusion of evidence, could not establish a prima facie case. *Id.* at 118.

The supreme court, focusing on the "obvious prejudice" to the defendant, held that the trial court did not abuse its discretion in sanctioning for the spoliation of the components by excluding the expert's testimony and related evidence. *Id.* at 119. It emphasized that summary judgment was not a part of the sanction, but rather an "inevitable consequence" of the exclusion of the expert evidence. *Id.* at 118.

■ Himes argues that *Patton* is distinguishable because the expert conducted his examination in a context adverse to Himes, and therefore the credibility of the expert's testimony and report is substantially greater than that of the expert in *Patton*. We disagree. The prejudice in this case is obviously extreme. Woodings–Verona is unable to conduct an independent investigation of the very product that allegedly caused the injury for which it is being sued. It is of no consequence that Himes's expert was originally aligned against him; the expert is not now and never was aligned with Woodings–Verona. The opportunity to review the expert report and cross-examine Himes's expert are not sufficient remedies for Woodings–Verona's inability to inspect the item itself.[1]

The trial court's sanction does not imply any wrongdoing on Himes's behalf, but simply recognizes that he, as the plaintiff, should have to bear the consequences for the loss of the tool rather than Woodings–Verona. We also note that here, as in *Patton*, dismissal of the claims was only an "inevitable consequence" of the sanction excluding the expert testimony and report, not a part of the sanction itself. In any event, it seems patently incorrect to conclude that "no reasonable person would agree" with the trial court's decision.

## 2. Collateral Estoppel

■ Himes argues that regardless of the general propriety of the trial court's ruling, Woodings–Verona was collaterally estopped from relitigating the issue after the first trial judge's decision to admit the expert evidence in the first trial. This argument appears to be entirely novel and is without merit. Collateral estoppel prevents relitigation of a decided issue "in subsequent suits based on a different cause of action involving a party to the prior litigation." *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984). There is no "subsequent suit" here, and thus the doctrine does not apply. Himes cites no law suggesting that a trial court is prohibited from "reversing" itself on an evidentiary issue. Further, the trial court changed its decision based upon the supreme court's reversal of this court in *Patton*. It is absurd to suggest that even if exclusion of the evidence was proper under *Patton*, the trial court was bound to stand by its earlier ruling on the ground of collateral estoppel.

## DECISION

The trial court was within its discretion in excluding Himes's expert's testimony and report, and thus properly granted summary judgment for failure to establish a prima facie case. Himes's argument that collateral estoppel prevented the trial court from

---

1. We note that an expert retained by Woodings–Verona was critical of Himes's expert report, testifying by deposition that "[t]here are things I would expect to see that are not there," that Himes's expert did not do a very good job, and that he is critical about what Himes's expert did

not do. In particular, Woodings–Verona's expert was concerned with the report's lack of conclusions as to why a wrench with "good structure" suffered a "fatigue failure." He testified, though, that without the opportunity to examine the wrench it was "[impossible] [t]o say anything."

changing its earlier decision to admit the evidence is without merit.

**Affirmed.**

DAVIES, Judge (dissenting).

I respectfully dissent.

The case before us presents unusual circumstances that make it distinguishable from *Patton v. Newmar Corp.*, 538 N.W.2d 116 (Minn.1995). The evidence appellant seeks to introduce is the testimony and report of the *railroad's* expert. The adverse nature of the railroad at the time the expert conducted his testing lends substantial credibility to this evidence when now brought forward by the injured claimant against a second defendant, respondent here. The evidence should be admitted for whatever weight the jury gives it, after respondent independently reviews the report and cross-examines the expert.

The *Patton* rule is a harsh one that can be avoided under the particular circumstances of the case. Respondent would not be nearly as prejudiced by admitting the evidence as appellant is by its exclusion, which exclusion leads inevitably to the dismissal of appellant's potentially meritorious law suit. And respondent, unlike the defendant in *Patton*, would not be unfairly prejudiced by the admission of the essentially independent expert's testimony and report—evidence subject to challenge by cross-examination.

I would reverse the trial court's sanction excluding the evidence and remand for trial.