Linda Rae VAN GORDON, formerly known as Linda Rae Wilson, Plaintiff,

v.

Harlan BEAVER, Defendant and Third–Party Plaintiff,

v.

ULLAND BROTHERS, INC., Third–Party Defendant.

Civil No. 5–94–110.

United States District Court, D. Minnesota, Fifth Division.

March 27, 1996.

Douglas Gibbs Sauter, Sauter & Assoc., Coon Rapids, MN, for Linda Rae Van Gordon.

William F. Davern, Michael D. Barrett, Cousineau McGuire & Anderson, Mpls., MN, for Harlan Beaver.

James Alan Wade, Laura J. Schacht, Johnson Killen Thibodeau & Seiler, Duluth, MN, for Ulland Brothers, Inc.

## ORDER

DAVIS, District Judge.

This matter is before the court upon Plaintiff's objections to United States Magistrate Judge Erickson's Report and Recommendation dated February 14, 1996.

Pursuant to statute, the court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review and all the arguments of the parties, the court ADOPTS the Report and Recommendation (Clerk Doc. No. 12).

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant/Third–Party Plaintiff's Motion for Partial Summary Judgment is GRANTED;

2. Plaintiff's damages claim is accordingly limited to past and future pain and suffering; past and future chiropractic expense, if any; fatigue; loss of enjoyment of life; and other general damages.

## REPORT AND RECOMMENDATION

### Feb. 14, 1996

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant and Third–Party Plaintiff's ("Defendant's") Motion for the entry of a partial Summary Judgment, which would limit the Plaintiff's recovery to those damages that are not recoverable under the Minnesota Workers' Compensation Act.

In accordance with their agreement, the issues have been considered by the Court upon the parties' written submissions and, for these purposes, the Plaintiff has appeared by Douglas G. Sauter, Esq., and the Defendant has appeared by William F. Davern and Michael D. Barrett, Esqs. No appearance has been made by the Third–Party Defendant, as the Motion was filed prior to the joinder of that party, and the Third–Party Defendant has not requested an opportunity to be heard on the issue.

For reasons which follow, we recommend that the Defendant's Motion be granted.

## II. Factual and Procedural History

On August 27, 1990, near Perch Lake Township, Minnesota, a collision occurred between the Defendant's truck and a car that was being operated by the Plaintiff while she was in course and scope of her employment with Shades of Video, Inc. As a result of this accident, the Plaintiff alleges that she has sustained injuries to her head, neck, arms, legs, back and pelvis. In due course, the Plaintiff applied for workers' compensation benefits from her employer, and from her employer's workers' compensation carrier, the Minnesota W.C. Assigned Risk Plan ("Employer/Insurer"). The Employer/Insurer accepted primary responsibility for the Plaintiff's injuries, and paid her the usual blend of workers' compensation benefits. See, *Award and Stipulation for Settlement of Workers' Compensation Claims* ("Settlement Agreement"), at 2.

Subsequently, the Plaintiff applied for additional workers' compensation benefits, including compensation for permanent partial disability and for ongoing chiropractic care. *Id.* at 2. Although this application was initially denied, the Employer/Insurer ultimately entered a settlement agreement with the Plaintiff, on April 24, 1992, and paid her a lump sum benefit of $20,000, together with $600 for her future chiropractic expenses. *Id.* at 3. In return, the Plaintiff agreed that these payments would represent "a full, final, and complete settlement of any and all past, present, and future claims for workers' compensation disability benefits, except for non-chiropractic medical." *Id.* at 3. As to her future, non-chiropractic medical expenses, the Employer/Insurer agreed to pay any such billings that were "reasonably related to the [Plaintiff's] injury of August 27, 1990." *Id.* at 4. In reaching this accord with the Employer/Insurer, the Plaintiff was represented by legal counsel and, as a consequence, the settlement is "conclusively presumed to be fair, reasonable, and in conformity with [the applicable workers' compensation law]." See, *Minnesota Statutes Section 176.521, Subdivision 2.*

■ Under the statutory laws of Minnesota, once the Plaintiff elected to receive workers' compensation benefits, the Employer/Insurer became subrogated to the Plaintiff's right to recover damages against the Defendant, or against any other third-party tortfeasor who was implicated in her injuries. See, *Minnesota Statutes Section 176.061, Subdivisions 5, 7 and 10;* see also, *Kliniski v. Southdale Manor, Inc.,* 518 N.W.2d 7, 9 (Minn.1994). On October 24, 1992, the Defendant and the Employer/Insurer reached an agreement and settled all of the Employer/Insurer's subrogation and indemnity claims against the Defendant that arose from the subject accident. Specifically, this settlement "extinguish[ed] any and all liability of [the Defendant] to the [Employer/Insurer] for the workers' compensation subrogation interest, for workers' compensation benefits paid or payable, past, present or future, as a result of the injuries allegedly occurring on or about August 27, 1990, * * *." *Reverse–Naig Release,* at 1.

On August 26, 1994, the Plaintiff commenced her present action against the Defendant, seeking to recover damages for past and future pain and suffering; past and future medical expenses; past and future wage loss; loss of future earning capacity; general disability; emotional distress; fatigue; loss of enjoyment of life; and other general damages. Arguing that the Plaintiff has been fully paid for any damages recoverable under the Workers' Compensation Act, the Defendant urges us to enter a partial Judgment to the effect that the Plaintiff is precluded from securing a double recovery of her workers' compensation benefits. As a consequence, we are asked to render a legal judgment on the proper inclusivity of the Plaintiff's request for damages and, finding no genuine issues of material fact, we conclude that the entry of a partial Summary Judgment is appropriate.[1]

---

1. Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the non-moving party has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Cram v. Lamson & Sessions Co.,* 49 F.3d 466, 471

## III. *Discussion*

■ In the Defendant's view, the two pretrial settlements in this litigation—namely, the Settlement Agreement between the Plaintiff and the Employer/Insurer, and the subsequent settlement between the Defendant and the Employer/Insurer—act in concert to preclude the Plaintiff's recovery of any damages that would be recoverable under the Minnesota Workers' Compensation Act. According to the Defendant, the only damages, that the Plaintiff can now recover, relate to her claims of past and future pain and suffering. In contrast, while conceding that the Defendant should, in all probability, be entitled to a post-Verdict offset, for any damages that have already been paid by the Employer/Insurer, the Plaintiff argues that it would be inappropriate to now limit her damage claims, and she requests an Order that would allow her to submit all of her claims to the Jury for resolution.

■ We disagree with the Plaintiff's contention, for we are persuaded that the governing laws of Minnesota require a mechanism, for the trial of the Plaintiff's unresolved claims, that is "workable, not unduly complicated, least wasteful of judicial resources, and most consistent with the legal principles involved and the interests of the employee, employer, and third-party defendant tortfeasor[s]." *Tyroll v. Private Label Chemicals, Inc.,* 505 N.W.2d

54, 60 (Minn.1993). Under the circumstances presented here, that mechanism would limit the Plaintiff's proof to those damage claims which have not been fully and finally compromised.

■ Necessarily, our analysis of the parties' conflicting positions commences with a brief overview of the interplay, under Minnesota law, between an injured plaintiff's workers' compensation claim, and her tort claim, under Minnesota's common law, against the third-party tortfeasor. Where, as here, a plaintiff alleges that she was injured, while at work, by the negligence of a third-party tortfeasor, her action against that tortfeasor encompasses two separate claims. The first involves an action against the tortfeasor for those damages that are "non-recoverable" under Minnesota's workers' compensation law—namely, damages for "pain and suffering, general disability, embarrassment, disfigurement, and mental anguish." *Tyroll v. Private Label Chemicals, Inc.,* supra at 59.

■ As a second component of the plaintiff's action, she is statutorily authorized to prosecute a claim, which includes her employer/insurer's subrogation interest against the tortfeasor, for the amount of workers' compensation benefits that the employer/insurer has paid, or will pay to the plaintiff, as a result of her claimed injuries. See, *Minne-*

(8th Cir.1995); *Barnard v. Jackson County, Missouri,* 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995). For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Churchill Business Credit, Inc. v. Pacific Mutual Door Co.,* 49 F.3d 1334, 1336 (8th Cir. 1995); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66–67 (8th Cir.1994).

As Rule 56(e), Federal Rules of Civil Procedure, makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure; Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska, ex rel. Nelson v. Central Interstate Low–Level Radioactive Waste Commission,* 26 F.3d 77, 80 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

Moreover, a defendant is entitled to Summary Judgment where a plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265; *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.,* 968 F.2d 695, 699 (8th Cir.1992). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552; *Fischer v. NWA, Inc.,* 883 F.2d 594, 599 (8th Cir.1989), cert. denied, 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

sota Statutes Section 176.061, Subdivision 5(a). Quite logically, this latter claim is limited to those damages which are "recoverable" under the workers' compensation laws [2] —such as those for past and future medical expenses,[3] past and future wage loss, and loss of future earning capacity. *Tyroll v. Private Label Chemicals, Inc.,* supra at 59.

As the Minnesota Supreme Court has explained in *Folstad v. Eder,* 467 N.W.2d 608 (Minn.1991), because of the interaction between these two distinct claims, their resolution—either by settlement or by trial—may require the joint participation of both the plaintiff and her employer/insurer. When both claims are collectively resolved—either by trial or by settlement—Minnesota law requires that the proceeds, which arise from that resolution, be allocated between the plaintiff and the employer/insurer. See, *Minnesota Statutes Section 176.061, Subdivision 6.*[4] Of course, Minnesota law also recognizes that the plaintiff and her employer/insurer may separately resolve their respective claims, either by settlement or by trial. See, *Folstad v. Eder,* supra at 611 (enumerating and explaining the options available to plaintiff-employees and to employer/insurers in resolving their respective claims). When separate settlements are accomplished, before the trial of the action, then the allocation formula of Minnesota Statutes Section 176.061, Subdivision 6, is inapplicable as the recovery is for a separate, rather than for a commingled, claim. *Id.*

Here, the Plaintiff resolved her workers' compensation claim through a full, final and complete settlement with her Employer/Insurer. She could, and did, accomplish this settlement without any participation by the Defendant. According to the terms of that settlement, the Employer/Insurer resolved the Plaintiff's past workers' compensation claims and, as we have noted, agreed to be liable for "any future non-chiropractic medical which is reasonably related to the employee's injury of August 27, 1990." *Settlement Agreement,* at 4. In turn, the Employer/Insurer settled its right to contribution or indemnity against the Defendant by what is known as a "reverse-*Naig*" agreement, which allows the Plaintiff "to pursue her remaining claim against the third party tortfeasor." *Folstad v. Eder,* supra at 611. This "remaining claim" is all that now pends before this Court and, therefore, the issue resolves to a determination of what elements of damage remain subject to recovery.

2. The Minnesota Supreme Court has distinguished the damages that are "recoverable" in a workers' compensation action, from those which are "non-recoverable," by noting the distinctions which differentiate workers' compensation damages from common law tort damages. Accordingly, the Court has observed that workers' compensation damages are more limited in scope as they are "intended to compensate for loss of income due to inability to work because of a job-related injury (and, of course, for medical expenses)." *Tyroll v. Private Label Chemicals, Inc.,* 505 N.W.2d 54, 59 (Minn.1993). Tort damages, "on the other hand, are, in some respects, more expansive, both in kind and amount." *Id.*

3. In actuality, an employer/insurer's claim against a tortfeasor, for the reimbursement of payments made to a plaintiff for medical expenses, is not a subrogation claim at all. Under Minnesota law, an employer/insurer is permitted to commence a cause of action so as to recover those payments and, unlike a subrogated claim, such an action will exist separate and apart from the plaintiff's entitlements as a workers' compensation claimant. See, *Minnesota Statutes Section 176.061, Subdivision 7;* see also, *Folstad v. Eder,* 467 N.W.2d 608, 611 (Minn.1991).

4. The allocation formula of Minnesota Statutes Section 176.061, Subdivision 6, has been paraphrased as follows:

Under subdivision 6, the employee's tort recovery is divided as follows: first, collection expenses and attorney fees (about ⅓ of the recovery); then ⅓ outright to the employee; next the employer's subrogation claim less a pro rata share for attorney fees; and finally, any balance remaining to the employee subject to a credit to the employer for any future benefits payable.

*Kliniski v. Southdale Manor,* 518 N.W.2d 7, 9 n. 2 (Minn.1994). Such an apportionment is necessary because, as we have noted in the text of this Report, the plaintiff's tort recovery includes both her tort damages, which are "non-recoverable" under the Workers' Compensation Statute, and the employer/insurer's subrogated claim for the reimbursement of those payments which were made to the plaintiff under the Minnesota Workers' Compensation Act. Allocation allows these competing interests to be satisfied from a common recovery of damages.

Although, at one time, excursions into this area of the law could properly be characterized as "somewhat shrouded in ambiguity," a series of clarifying decisions, by the Minnesota Supreme Court, have significantly simplified our consideration of the issue before us. See, *Jackson v. Zurich American Insurance Company*, 542 N.W.2d 621 (Minn.1996); *Kliniski v. Southdale Manor, Inc.*, supra; *Tyroll v. Private Label Chemicals, Inc.*, supra; *M.W. Ettinger Transfer v. Schaper Mfg.*, 494 N.W.2d 29 (Minn.1992); *Folstad v. Eder*, supra. Notwithstanding this helpful exploration of the subject area, our research has failed to isolate any decision which is precisely on point, and the parties have failed to draw one to our attention. As a consequence, our analysis resorts to reasoning by analogy. In this respect, we think the Court's reasoning, and its holding, in *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899 (Minn.1984), properly disposes of the issue before us.

In *Kaiser*, the City of St. Paul, as the employer of injured firefighters, commenced an action against a third-party tortfeasor, asserting a subrogation claim for the workers' compensation payments that the City had made to the firemen. Prior to trial, the tortfeasor moved for Summary Judgment, which was granted, and which absolved the tortfeasor from any liability to the City under the Minnesota Workers' Compensation Statute. No appeal was taken from that Judgment and, when the firefighters commenced their own action against the same tortfeasor, the tortfeasor claimed that their action was barred by the doctrine of res judicata or collateral estoppel. While the Trial Court ruled that the prior Judgment was not a bar, the Supreme Court disagreed and held that, "to the extent that the firefighters' claims encompass claims for damages already adjudicated by the court in the employer's subrogation action, the firefighters are barred from asserting those claims by the principle of res judicata." *Id.* at 903.

The bar, however, was not absolute, as the Court went on to hold, as follows:

> An employee may pursue full common law recovery against a third-party tortfeasor for damages not cognizable under the Workers' Compensation Act. Thus, while the firefighters could assert claims for pain and suffering, loss of earning capacity, loss of consortium, emotional distress and other items not compensable under workers' compensation law, the city, having no subrogation interest in these non-compensable claims, could not have asserted these claims. * * * Because these are claims different from those previously brought by the city, res judicata does not bar [the firefighters'] claims for damages not compensable under workers' compensation.

*Id.* at 903–04 [citations omitted].

Of course, we are not confronted with a prior adjudication, but the effect of the two settlements would, indeed, have the same preclusive impact as would an adjudication since, here, it was the Employer/Insurer's claim against the Defendant that was settled, and not a claim of the Plaintiff. As a consequence, in settling its claim, the Employer/Insurer has not prejudiced any of the Plaintiff's rights.

█ Accordingly, the Defendant is entitled to a partial Summary Judgment which precludes the Plaintiff from seeking a recovery for claims that were preclusively resolved by the settlement reached between the Defendant and the Employer/Insurer. These resolved—and, therefore, precluded claims— include the Plaintiff's request for past and future wage loss, and loss of earning capacity.[5] See, *Tyroll v. Private Label Chemicals, Inc.*, supra at 59. While the Plaintiff has not presented any legal authority which would commend a different result, we understand her to argue that the preclusion of such damage claims would prejudice her interest in a full recovery. We disagree. While represented by legal counsel, the Plaintiff elected to resolve her claims against the Employer/Insurer and, under legal principles which

---

5. To the extent that the Minnesota Supreme Court, in *Tyroll v. Private Label Chemicals, Inc.*, supra, has included "loss of earning capacity" as a "recoverable" claim under the Minnesota Workers' Compensation Act, we read that inclusion as implicitly overruling the Court's prior listing of "loss of earning capacity" as a "non-recoverable" damage claim in *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 903 (Minn. 1984).

had long preexisted the effectuation of that Settlement, she would have had to have been aware of the potential that the Defendant could secure a reverse-Naig release from the Employer/Insurer. No legerdemain was at play here, as we find that a limitation on the Plaintiff's damage recovery, against the tortfeasors, is mandated by Minnesota law.

 Lastly, we must consider the Plaintiff's claim that she should not be limited in her recovery of damages for future medical expenses. This issue is directly resolved by the Minnesota Supreme Court's holding in *Folstad v. Eder*, supra. Here, as in *Folstad*, the employer/insurer settled its claim against the third-party tortfeasor for the reimbursement of the medical expenses that were paid on behalf of the plaintiff. The Court concluded that these "subrogated damages," having been settled out of the plaintiff's action, should not properly be a part of the plaintiff's case. In the words of the Court:

> When the subrogated damages have been separated out of plaintiff's action and settled by the compensation carrier prior to trial, there is nothing left for the collateral source statute to act upon. Ordinarily there is no need to continue to assert in plaintiff's action a subrogation claim that has been settled and is now out of the lawsuit. There is no need to deduct what is no longer there to be deducted.

*Folstad v. Eder,* supra at 613.

We think that the very same may be said here. The Plaintiff's past medical expenses have been paid, and her future medical expenses, which are reasonably related to her relevant injuries, will also have been paid by the Employer/Insurer. Accordingly, as to future non-chiropractic medical damages, there is nothing to submit to the Jury. See,

*Minnesota Statutes Section 548.36* ("Collateral Source Statute"). We think, however, that the Plaintiff's claim for future chiropractic expense must be treated differently, since she bears some potential of incurring such expenses without reimbursement from the Employer/Insurer. Unlike the non-chiropractic medical expenses, which will be timely paid by the Employer/Insurer, there is some prospect that chiropractic expenses, if any, will not be subject to the Collateral Source Statute, and their award will not result in a "double recovery" to the Plaintiff. As a consequence, if the Plaintiff has incurred chiropractic expenses through the time of trial and into the future, which are not subject to the Collateral Source Statute, she should be permitted to prove those at her trial. Otherwise, we cannot envision any plausible basis for allowing the Plaintiff to litigate claims that have already been resolved.[6]

THEREFORE, It is—

RECOMMENDED:

That the Defendant/Third–Party Plaintiff's Motion for a partial Summary Judgment [Docket No. 12] be granted, and that the Plaintiff's damage claim be limited to past and future pain and suffering; past and future chiropractic expense, if any; general disability; emotional distress; fatigue; loss of enjoyment of life; and other general damages.

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 27, 1996,** a writing which specifically identifies

---

6. The Plaintiff has argued that her medical bills should be *admitted* at trial and, for this argument, she has relied upon the Court's recognition, in *Folstad v. Eder*, supra at 613, that certain procedural or substantive requisites may require such proof. In *Folstad*, the Court recognized that the Plaintiff had an obligation to prove that her medical expenses exceeded $4,000 in order to exceed the no-fault threshold. See, *Minnesota Statutes Section 65B.51, Subdivision 3.* Here, the Plaintiff offers no correlating element of proof that would require the admission of her medical expenses, excepting those related to her chiropractic care. Given the fact that her claims at trial will largely focus upon her past and future pain and suffering, we see no need for her to itemize her medical expenses in proving the extent and intensity of her pain. Of course, such proof can include the number and duration of her hospitalizations, medical appointments, and the like.

those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 27, 1996,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.